WALKER *vs.* THE VALE ROYAL MANUFACTURING COMPANY.

1. It is only when there is no evidence of a vital controlling link in the chain of facts necessary to make out the plaintiff's case, that a direction by the judge to the jury to find for the defendant is permissible. But where a suit was brought for a breach of a contract alleged to have been made by an agent, and there was no proof whatever of the agency, such a charge will not require a reversal.

2. The fact that the person alleged to have been the agent of the defendant at the time of the original employment, but of which there was no proof, was subsequently the superintendent of the defendant company, and that the plaintiff was employed under him by the day, subject to be discharged at the option of such superintendent, was no ratification of a contract of permanent employment claimed to have been formerly made by the agent and for a higher price.

January 26, 1886.

Charge of Court. Contracts. Principal and Agent Before Judge HARDEN. City Court of Savannah. July Term, 1885.

To the report contained in the decision, it is necessary to add only that the evidence for the plaintiff, which it was claimed established the agency of Morse for the defendant, was, in brief, as follows: · The plaintiff was working in New Orleans. One day he met Morse at the house of the latter. Morse asked him how much he was getting per day. He replied $2.75. Morse said, " I want you to go with me, and I will give you $3, and if business is good, will raise you to $3.25 or $3.50." He said he would write for the plaintiff when he was ready. In response to a letter and telegram from Morse, the plaintiff went to Savannah on May 12, and presented himself at the plaintiff's works. Morse said he was not ready for the plaintiff; that the machinery had not arrived; and he would not be ready for some time. He was superintendent in charge of the hands when the plaintiff got there. The plaintiff heard his wife was sick and went back to New Orleans; returned snbsequently and went to Morse. He put the plaintiff off. On May 25, the plaintiff went to work. He had no arrangement about pay, and went to work on the agreement made in New Orleans. Morse had never been in Savannah at the time of making the agreement, but said he expected to come and wanted the plaintiff to come with him. The plaintiff went to work on Monday, and at the end of the week Morse, paid him $10. The plaintiff complained at the amount, and Morse said he would make it all right later, and would give him the place promised him in New Orleans as soon as he could work out the man then in the place. Morse reprimanded the plaintiff about his work, and the plaintiff quit. He said Morse had promised him $3 per day, and was giving him only $2; Morse denied it. He was superintendent of the defendant's works when the plaintiff "got there." " I was not bound for any particular time by my agreement with Morse; suppose the longer I staid the better I would be liked. He told me there was no doubt about my getting the place. I had the right to quit when I pleased;

he could have discharged me, if he wanted to, at any time, because there was no agreement."

Two letters from Morse, dated April 20 and April 29, were introduced in evidence. The first was to other workmen in New Orleans, asking them to come to Savannah, and stating that he thought he could put them to work. The second was to the plaintiff, and stated that Morse had written to him to come to Savannah about the 1st prox., but that he would not be ready until about the 10th, as the machines were slow about arriving.

On behalf of the defendant, the evidence was, in brief, as follows: *Morse* testified substantially as follows: He was in New Orleans in April, and saw the plaintiff. The latter had worked under him. Morse asked him if he wanted to go to Savannah, and if he did, promised to try to get him a position in the factory where Morse himself was to be employed. He had no authority to employ hands then in New Orleans. After reaching Savannah, he wrote the plaintiff to come. The plaintiff came, and said he wanted a few days to look around in. The next day, Morse learned that he had gone back to New Orleans, and put another man in the place which he had intended to give the plaintiff. He wrote the plaintiff not to come back, as the place was filled. In a week or so, the plaintiff appeared and said he had not heard from Morse, and asked for a job. Morse gave him one. He worked about three weeks, and becoming angry because of Morse's finding fault with him, quit work Morse did not have authority to engage him in New Orleans, and told him so; neither did he promise any particular place or wages; but said he had no doubt the plaintiff could get as good a place as that in which he was. At the time of testifying, Morse stated that he was foreman of the hands in the defendant's works, and engaged and dismissed them as he saw fit. He had other men from New Orleans.

*H. P. Smart* testified that he was superintendent of the defendant company; that he engaged Morse in New

Orleans on trial; that the latter had no authority to employ other laborers for the factory. When he came to Savannah, he was put in charge of the factory as foreman. The witness never knew of the engagement of the plaintiff until the suit was brought, except to see his name on the book at $2 per day.

W. H. WADE, for plaintiff in error.

LESTER & RAVENEL, for defendant.

JACKSON, Chief Justice.

This is an action on the case for damages brought by the plaintiff in error against the defendant in error. The allegations are to the effect that the defendant in error employed, by an agent, the plaintiff in error to work in its shops in Chatham county, Georgia; that the agent employed him in New Orleans, where he was permanently employed; that thereupon he moved to Savannah at great expense; that the contract made in New Orleans was broken by the defendant in error; and that the plaintiff in error, in moving to Savannah, in breaking up in New Orleans, and in the company's (the defendant in error's) failure to comply with its contract, was damaged six hundred dollars.

On the close of the evidence on both sides, the court instructed the jury to return a verdict for the defendant, on the ground that there was no evidence at all that Morse, the alleged agent, was the agent of the defendant in error in New Orleans when the contract was made, and therefore nothing said by him to plaintiff in error could bind the company.

On the denial of the motion for a new trial, error is assigned on this direction to the jury.

1. It is only when there is no evidence of a vital, controlling link of the chain of facts necessary to make out the plaintiff's case that such direction by the judge is per-

missible. The agency of Morse is such a link in the chain of necessary proof in this case. We see no shadow of evidence of such agency of Morse in this record; therefore, the breach of his contract, if he made one, cannot bind the defendant in error.

2. Nor was the subsequent employment by the day at a lower price, and for no specified time, and knowledge by the company that plaintiff in error was so at work, any ratification of the contract alleged to have been made in New Orleans by Morse. The subsequent working of the plaintiff as a day laborer, to be turned off at the option of Morse, who was then superintendent of the company, was no ratification by Morse himself of a contract to give permanent employment at a much higher price; much less can it be a ratification by the company, which knew nothing about it beyond seeing a man by the name of Walker working at two dollars a day in their shops under Morse, their then superintendent.

Surely authority is not necessary to fortify propositions of law so plain and just as those above applied to the pleadings and evidence here. *Hobby vs. Alford*, September term, 1884, 73 *Ga.*, 791.

Judgment affirmed.